**People of the State of Illinois, Plaintiff-Appellee,
v. Essau Harges, Defendant-Appellant.**

**Gen. No. 51,325.**

First District, First Division.

October 30, 1967.

Irving Bronstein, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Essau Harges, was charged with (1) negligent driving; (2) driving without an operator's license, and (3) operating a vehicle while under the influence of intoxicating liquor. The jury found the defendant not guilty of negligent driving and of driving without an operator's license, but found him guilty of operating a vehicle while under the influence of intoxicating liquor. Upon judgment on the verdict, the defendant was sentenced to thirty days imprisonment, and he appeals.

The defendant contends, on appeal, that (1) the court erred in permitting the complaint to be amended; (2) that testimony of a breathalizer test was admitted without proper foundation; (3) that the verdict was contrary to the weight of the testimony; (4) that the court exhibited partiality in favor of the state; (5) that the tactics of the prosecutor were prejudicial and deprived him of a fair trial; (6) that the court permitted an untrue inference to be drawn by the jury in that it allowed the jury to believe that the defendant would not be imprisoned if a verdict of guilty was to be returned; (7) that the court failed to have a sworn officer in charge of the jury; and (8) that defense counsel was not permitted to poll the jury.

We will only briefly summarize the testimony elicited at trial as to the factual occurrences involved because we have decided to reverse and remand the case for a new trial. On the evening of February 26, 1965, Task Force Officers Young and Jones were patrolling in the area of Madison Street and Homan. Both officers testified at trial that as the defendant made a left turn, from Madison to Homan, he straddled the cement divider in the middle of Homan Avenue with his car. They followed the defendant's car into an alley behind 3300 West Monroe Street where the defendant stopped his car; the two officers then approached the defendant's

378

car and found him sitting in the front seat with one, Frank Black. Officer Young testified that after he had informed the defendant of his traffic violation, he detected "an odor of alcoholic beverage on the Defendant." The defendant was then taken to the police station where he was given various tests, including a breathalizer examination, to determine the state of his sobriety. The breathalizer test showed a reading point .180 percent blood alcohol.

The defendant's version of the events leading up to his arrest for driving under the influence of intoxicating liquor was as follows: He had not been driving his car prior to his arrest, but rather he and Frank Black had purchased two quarts of beer and some whiskey and then consumed it in his car while the car was parked in the rear of his house; the police approached his car, asked him what he was doing there, and stated "it seems like you are drunk"; the police then asked for a bribe, and upon the defendant's refusal of this request he was arrested.

We are in accord with the defendant's contention that he was deprived of a fair trial by prejudicial tactics of the prosecutor during the course of the trial. The prosecutor asked the defendant, on cross-examination, about the events that occurred subsequent to his arrest, and in particular about what transpired in the Fillmore Police Station:

"Q. What did you observe at the Fillmore Police Station, did you see anything on the wall?

"A. Some signs in regard to the law, and it said something about your rights to legal counsel.

"Q. Have you ever seen Fillmore Station before?

"A. I have, do you mean before I was arrested?

"Q. At any other time?

379

"Mr. Bronstein: Objection to counsel's speech.

"The Court: Sustained.

"Mr. Davidson (prosecutor): What is he objecting to?

"The Court: He is objecting to him asking has he seen Fillmore Police Station before.

"Mr. Davidson: So you sustained the objection.

"The Court: That is correct."

 The State, in its brief, insists that the question asked of the defendant—"Have you ever seen Fillmore Station before?"—, when it stands alone, is totally vague and ambiguous; the defendant's claim that this question suggested to the jury defendant's prior arrest record is pure conjecture; and moreover, that the court sustained counsel's objection to this question, and therefore no error was committed. The evidence in this case was of such a character that the prosecutor's question relating to a prior arrest of the defendant was clearly improper; this question represented an obvious attempt by the prosecution to bring to the attention of the jury the fact that the defendant had been to the Fillmore Station on a prior arrest. We can see no other purpose for this inquiry. It had no bearing on the question of guilt. It was otherwise irrelevant to and unconnected with any of the testimony previously given by the defendant on direct examination. Conduct such as that exhibited by the prosecutor in the instant case has been condemned on many occasions. The error is not cured by the court sustaining an objection. People v. Black, 317 Ill 603, 614, 148 NE 281. As the Supreme Court stated in People v. Decker, 310 Ill 234, 141 NE 710, "There is no question more damaging to a defendant with

a jury than one that suggests or intimates that he is a criminal or has been charged with criminal offenses." (P 243.) Such conduct is clearly reversible error.

■ Other instances of improper conduct by the prosecutor occurred during the course of the trial. Officer Alvin Young was called on rebuttal and testified that the first time he had heard of the bribery charge advanced by the defendant was when he was called in by the I. I. D. Section of the Police Investigation Unit. Officer Young also testified that he had been in court with the defendant on three occasions, "and none of this was brought out." This testimony was not proper rebuttal testimony. It was improper for the officer to refer to an investigation by the I. I. D. and to previous appearances he might have had with the defendant in court. At a conference in chambers following this testimony by Officer Young the trial judge stated, "I think he did seriously prejudice the minds of the jury." Although it appears from the record that defense counsel withdrew his original request for a mistrial because of the rebuttal testimony in question, there can be no doubt that the testimony of Officer Young had a prejudicial effect on the defendant's case in the minds of the jury.

■ The prosecutor also was guilty of improper and prejudiced argument to the jury. An example of this is when the prosecutor stated, "when someone is arrested for drunken driving the arrests come through our office, and this is where it begins; part of our job if there were some indications of bribery some action would have been taken here . . . forget about the alleged bribery, it is not before you." We recognize that considerable latitude must be allowed in argument, but it is elementary that it is beyond the realm of fair argument to inform the jury that the State's Attorney's office had investigated the bribery charge and found there was nothing to it. It was for the jury to determine that issue

without these prejudicial remarks and the court should have, on its own motion, stopped the argument and directed the jury not to consider it. People v. Moore, 9 Ill2d 224, 232, 137 NE2d 246.

We deem it necessary, since the cause must be tried again, to consider the contention of defendant that the breathalizer testimony was admitted without proper foundation. Chapter 95½, par 144 § 47(b) of the Illinois Revised Statute sanctions the use of the "breathalizer test" and makes the results of the examination admissible in evidence. It is common knowledge that the breathalizer is widely used at present. The defendant argues that there was insufficient proof of the scientific accuracy of the machine to eliminate the possibility of inaccurate results coming from some malfunction based on chemical failure. Officer Shaughnessy testified that he brought the breathalizer machine to the station and performed the test. He described the various procedures he used for the purpose of operating the machine, demonstrating to the satisfaction of the trial judge that he was competent to operate the machine. He said that the breathalizer was in good working order.

Officer Shaughnessy testified that he attended a forty-four hour course in the use of the breathalizer machine at Indiana University, and received a certificate upon completion of the course. He stated that he had administered over one hundred tests for the purpose of determining the amount of alcohol in the bloodstream. The competency of Officer Shaughnessy to testify as an expert witness was a question of fact for the trial judge and was a matter largely within his discretion. It is sufficient that the expert is familiar with the device and its operation, and the weight to be given to the question of the expert's competency is for the trier of fact. Any questions raised as to the proper functioning of the device are likewise to be resolved by the trier of fact.

People v. Abdallah, 82 Ill App2d 312, 226 NE2d 408. We find from the record that the trial judge correctly permitted the testimony concerning the breathalizer test to be considered by the jury.

The court did not err in permitting the complaint to be amended as charged. We need not decide the matters of the trial procedure that have been complained of on appeal. We find that the defendant did not receive a fair trial because of unfair and prejudicial tactics resorted to by the prosecution at trial, and therefore this cause is reversed and remanded for a new trial.

Reversed and remanded.

MURPHY, P. J. and ADESKO, J., concur.